IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JESSICA HINTON, et al.,           )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )      1:24cv709
                                  )
MAMBO ENTERPRISES, LLC, et al.,   )
                                  )
          Defendants.             )
```

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on "Plaintiffs' Motion to Approve Consent Judgment" (Docket Entry 47 (the "Motion") at 1 (all-cap, bold, and underscored font omitted)).[1] For the reasons that follow, the Court will grant the Motion.[2]

**BACKGROUND**

In August 2024, eleven "well-known professional models" (each, a "Plaintiff," and collectively, the "Plaintiffs") (Docket Entry 1 (the "Complaint") at 2) sued the operators and managers of certain night clubs (see id. at 1-2, 5-7) for the alleged "misappropriation, alteration, and unauthorized publication and use in advertising of Images of Plaintiffs" (id. at 2) in "violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which

---

   1   Docket Entry page citations utilize the CM/ECF footer's pagination.

   2   Pursuant to the parties' consent, Chief United States District Judge Catherine C. Eagles referred this case to the undersigned United States Magistrate Judge for all proceedings. (See Docket Entry 46 at 1.)

prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes" (id.), as well as various North Carolina state laws. (See id. at 1-29.) According to the Complaint:

Plaintiffs' images were "misappropriated, and intentionally altered, by [the d]efendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with [the d]efendants[' night clubs]." (Id. at 8.) However, "this apparent [associational] claim was false." (Id.; see also, e.g., id. at 9-10 (asserting that relevant defendants posted photographs of particular Plaintiff on their "social media accounts" that "were intentionally altered to make it appear that [such Plaintiff] was either an employee working at [the night clubs], that she endorsed [the night clubs], or that she was otherwise associated or affiliated with [the night clubs]," despite fact that said Plaintiff "has never been employed at [those clubs], has never been hired to endorse [those clubs], has never been otherwise associated or affiliated with [those clubs], [and] has received no remuneration for [the d]efendants' unauthorized use of her Images").) Additionally, "th[e] misappropriation occurred without any Plaintiff['s] knowledge, consent, or authorization." (Id. at 8.) "No Plaintiff has ever received any remuneration for [the d]efendants' improper and illegal use of [her] Images, and [the

2

d]efendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation." (Id.) "Further, in certain cases [the d]efendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow [her] fan base, and build and maintain [her] brand." (Id.) "In other cases, [the d]efendants misappropriated Plaintiffs' Images from other sources through unlawful violation of copyrights and or licenses that were not and never were held by [the d]efendants." (Id.) "As of the date of this Complaint, [the d]efendants' use of Plaintiffs' images is ongoing and [the d]efendants thus continue to reap the benefit of their alleged association with Plaintiffs, which is of course, false." (Id.) Plaintiffs attached screenshots of the relevant images to their Complaint. (See Docket Entries 1-2 to 1-12.)

In October 2024, Mambo Enterprises, LLC, d/b/a Bongos Night Club, MPG Entertainment & Promotion, Inc, d/b/a Mansion Nightclub (collectively, the "Defendants"), and Mateo Padilla Gonzalez (collectively with Defendants, the "Mambo Defendants") filed an answer to the Complaint. (See Docket Entry 25 (the "Answer") at 1-32.) The Answer did not dispute the authenticity of the pertinent

3

images. (See generally id.)³ Instead, the Answer indicated that "[Mambo] Defendants hired and paid independent contractor Conciertos Latinos, LLC and Jeisson Alba to make promotional flyers for their clubs, including those as set forth in [the relevant] Exhibit[s to] the Complaint." (Id. at 7; see also id. at 8-11.) The Answer further asserted that "[Mambo] Defendants hired and paid Conciertos Latinos, LLC and Jeisson Alba to make promotional flyers for their nightclubs, including those referenced in the Complaint, with [Mambo] Defendants not involved in the making or creation of those flyers." (Id. at 7-11; see also, e.g., id. at 12 ("[I]t is admitted that [Mambo] Defendants hired and paid independent contractor Conciertos Latinos, LLC and Jeisson Alba to make and create promotional flyers, including those as set forth in the Exhibits attached to the Complaint, and which were subsequently used to promote Bongos Night Club and Mansion Night Club.").)⁴

---

3 The Answer also admitted that the relevant Plaintiffs "ha[ve] not been employed or hired by [Mambo] Defendants." (Id. at 7-11.)

4 The exhibits attached to the Complaint implicate Mambo Defendants in the use of ten Plaintiffs' images. (See Docket Entries 1-2 to 1-8, 1-10 to 1-12; cf. Docket Entry 1-9.) The Complaint's allegations regarding one such exhibit, Exhibit I, and Plaintiff, Keller, relate solely to the Macarenas Night Club (see Docket Entry 1 at 16), but the exhibit itself notes the involvement of "MPG Entertainment," "Bongos Greensboro," and "Bongos Macarenas Nightclub" (Docket Entry 1-10 at 2-3 (all-cap and italicized font omitted)). The Complaint also erroneously labels the exhibit containing the image of Plaintiff Rao as "Exhibit J" rather than "Exhibit K." (See Docket Entry 1 at 17 ("Rao is depicted in the photos in Exhibit 'J' to promote Mansion on its on related social
(continued...)

4

Accordingly, in November 2024, Mambo Defendants filed a third-party complaint against Conciertos Latinos, LLC and Jeisson Alba (collectively, the "Third-Party Defendants"), seeking, inter alia, contribution or indemnification "in the event Plaintiffs are adjudged and entitled to recover damages from [Mambo] Defendants" (Docket Entry 28 (the "Third-Party Complaint") at 5; accord id. at 6). (See id. at 1-8.) However, the record does not reflect whether Mambo Defendants served the Third-Party Complaint on Third-Party Defendants. (See Docket Entries dated Nov. 11, 2024, to present (reflecting only filing of Third-Party Complaint and issuance of original and revised summonses for Third-Party Defendants).) Separately in November 2024, defendants Jack's Across the Tracks, Inc. and Andrew Wilson moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"). (See Docket Entry 29 at 1-2.) In January 2025, concluding that the Complaint "plausibly allege[s] that the defendants were responsible for the use of the [relevant P]laintiffs' images without consent" (Docket Entry 39 at 1), the Court (per Chief United States District Judge Catherine C. Eagles) denied that dismissal request and directed those defendants to file an answer. (Id. at 1-2.) After those defendants filed their answer in February 2025 (see Docket Entry 42

---

4(...continued)
media accounts"); see also Docket Entry 1-12 at 1-2.)

at 14), the parties proposed that discovery commence as soon as the Court entered its Scheduling Order, with fact discovery to finish in or before August 2025. (Docket Entry 43 at 2; see also id. at 6.) The Court (per the undersigned) promptly adopted the parties' proposal, officially commencing the discovery period in February 2025. (See Text Order dated Feb. 20, 2025.)

Thereafter, in May 2025, Plaintiffs moved for entry of a consent judgment for $700,000, explaining that the proposed judgment "has been negotiated by the [participating] parties in connection with the settlement of all claims in this action [against those parties] and is reasonable in light of what a jury might reasonably award in compensation attributable to Defendants' alleged conduct, coupled with the amount of attorneys' fees and costs the Court may reasonably award pursuant to 15 U.S.C. § 1117 in the event Plaintiffs prevail at trial." (Docket Entry 47 at 1.) According to the proposed consent judgment:[5]

> This is an action brought pursuant to, *inter alia*, 15 U.S.C. § 1125(a) relating to advertisements published by Defendants depicting images of Plaintiffs. These advertisements were published using multiple social media venues, including but not limited to Defendants' Facebook and Instagram accounts.
>
> Plaintiffs alleged in the Complaint that Defendants used their images without consent or remuneration, and

---

[5] Correcting various errors in their original proposed consent judgment, Plaintiffs have substituted a corrected proposed judgment for their original filing. (Compare Docket Entry 49 at 3-6 (quoting original version), with Docket Entry 47-1 at 1-5.) This Opinion utilizes the corrected proposed consent judgment.

that the advertisements depicted Plaintiffs in a manner that implied they were promoting the Defendants' night club, worked thereat, or were otherwise associated, affiliated, or connected with same.

Beginning in or around 2014, and throughout the time of Defendants' violations of 15 U.S.C. § 1125 pertaining to each Plaintiff set forth above, Defendants were insured by a commercial general liability policy issued by United States Liability Insurance Company ("USLI"), Policy No. CL 1672338. This Policy was renewed up through 2024.

Defendants tendered a request for defense and indemnification to USLI pursuant to the above-referenced policies.

USLI disclaimed all defense, coverage, settlement and indemnity obligations to Defendants.

The Parties have therefore entered into a settlement agreement (the "Agreement") pursuant to which, their Answer notwithstanding, Defendants consent to entry of the following judgment for the purpose of compromising disputed claims: a judgment in the amount of SEVEN HUNDRED THOUSAND DOLLARS ($700,000) (hereinafter, the "Stipulated Judgment") to be entered against Defendants and in favor of Plaintiffs.

The amount of the Stipulated Judgment is reasonable in light of what a jury might reasonably award in compensation attributable to Defendants' alleged conduct coupled with the amount of attorneys' fees and costs a Court may reasonably award pursuant to 15 U.S.C. § 1117 in the event Plaintiffs prevail at trial.

Further, as part of the [P]arties' settlement, Defendants have agreed that once the Stipulated Judgment is entered herein, Defendants will assign to Plaintiffs all of their rights, claims, and causes of action against USLI and each of their agents, brokers, employees, officers and all other persons or entities to or arising out of: (i) any applicable insurance policy or policies; (ii) the claims made by Plaintiffs against Defendants herein; and, (iii) any other assignment entered into by and between Plaintiffs and Defendants (the "Assigned Claims").

> In consideration for these assignments, and effective after such assignments have been delivered to Plaintiffs, Plaintiffs agree to not take any action of any kind to assign, document, record, register as a lien, or collect against Defendants, the Stipulated Judgment; save and except for Defendants' assets consisting of any and all right, title and interest in the USLI policies, together with all of their respective rights, claims, and causes of action in the Assigned Claims (the "Insurance Covenant").
>
> The Parties' settlement is reasonable.
>
> This Stipulated Judgment will be the complete and final judgment addressing all claims Plaintiffs have asserted in this lawsuit against defendants MAMBO ENTERPRISES, LLC, MATEO PADILLA GONZALEZ, SALON DEGOLLADO & SPECIAL EVENTS, LLC, CINTHYA PRIETO MACIAS, and MPG ENTERTAINMENT & PROMOTION, INC.
>
> This Stipulated Judgment will have no effect on the claims Plaintiffs have asserted against defendants JACK'S ACROSS THE TRACKS, INC. or ANDREW WILSON.

(Docket Entry 47-1 (the "Proposed Judgment") at 1-3 (all-cap and italicized font in original) (paragraph numbering omitted).)

As Plaintiffs initially failed to "provide[] any evidence or legal authority supporting the reasonableness of the Proposed Judgment" or otherwise "show that it does not qualify as collusive" (Docket Entry 49 (the "Show Cause Order") at 9), the Court ordered Plaintiffs to "show cause why the Proposed Judgment does not qualify as collusive or otherwise unreasonable" (id. at 10 (all-cap and bold font and citation omitted)). The Court further directed Plaintiffs to serve the Show Cause Order and their responses thereto upon USLI, "with such service documented on the certificate of service filed with such response." (Id.) Plaintiffs thereafter

8

filed a response articulating the appropriate methods for calculating damages for "Defendants' use of Plaintiffs' images in this case" (Docket Entry 52 (the "Response") at 1; see id. at 1-5), along with a "declaration of [Plaintiffs'] valuation expert, Stephen Chamberlin" (id. at 1),[6] regarding "the fair market value of Defendants' use of Plaintiffs' image[s] in commercial advertising" (id.). (See Docket Entry 52-1 (the "Declaration") at 22.) Per the Response,

> Chamberlin's estimate of damages . . . led to the proposed consent judgment amount of $700,000 and thus Plaintiffs are hopeful [that] Chamberlin's [D]eclaration and explanation of his methodology, as applied to Defendants' use of Plaintiffs' images in this case, provides this Court with the requisite evidence to support its entry of the judgment.

(Docket Entry 52 at 1.)

However, the Response failed to document service on USLI (see id. at 6), and the record otherwise lacked any indication that Plaintiffs had "served the Show Cause Order on USLI and/or that

---

[6] Chamberlin has served as a "model and talent agent," including for "hundreds of the world's top models," for more than 35 years, in which capacity "it has been [his] job to be intimately familiar with the modeling market, to quote work, negotiate deals and understand the particular factors driving the pricing for the particular work and the [m]odels." (Docket Entry 52-1 at 2; see also id. at 14 (explaining that, "[a]s a consequence of [his] extensive knowledge and experience in the industry, [Chamberlin is] frequently called upon to speak at national and international modeling conventions," including serving as "a keynote speaker at more than 30 conventions," and "[is] well reg[ar]ded for [his] expertise in the area of image use, the valuation of image uses, model and public personality career valuation, and the effective rates of work").)

9

USLI possesse[d] any awareness of the Proposed Judgment" (Docket Entry 53 (the "Notice Order") at 3). The Court therefore ordered Plaintiffs to "(i) serve the Show Cause Order, their response thereto, and th[e Notice] Order upon USLI and (ii) file a notice documenting such service." (Id. (citations omitted).) The Court further established November 17, 2025, as "the deadline for filing any objections to the Motion and/or the Proposed Judgment." (Id. (citations omitted).) Plaintiffs subsequently filed a notice of compliance, explaining that they sent the identified materials "via FedEx to [USLI's] main corporate office address," as well as "via email to USLI's 'New Losses' department and to the company's point of contact, [R.M.]." (Docket Entry 54 at 1.)

On November 17, 2025, USLI filed objections to the Motion and Proposed Judgment. (See Docket Entry 55 (the "Objections") at 1-10.) In particular, the Objections urge the Court to reject the Proposed Judgment on the grounds that Plaintiffs have not effected service on USLI pursuant to Rule 4. (See id. at 1-5.) The Objections further assert that Plaintiffs' Response "do[es] not provide legal authority supporting the reasonableness of the Proposed Judgment or make any showing that the Proposed Judgment is not collusive." (Id. at 5; see id. at 5-8.) Instead, according to the Objections, "the Proposed Judgment should be rejected as collusive because the insured is incurring no detriment." (Id. at 7.) These Objections miss the mark.

10

## DISCUSSION

"In considering whether to enter a proposed consent decree, a district court should be guided by the general principle that settlements are encouraged." United States v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999). Nevertheless, a court "should not blindly accept the terms of a proposed settlement." Id.; see also Maryland, Dep't of the Env't v. GenOn Ash Mgmt., LLC, Civ. Action Nos. 10-826, 11-1209, 12-3755, 2013 WL 2637475, at *1 (D. Md. June 11, 2013) (noting that "the court is not expected to give mere boilerplate approval of the proposed decree, without consideration of the facts or analysis of the law").

> Rather, before entering a consent decree the court must satisfy itself that the agreement is fair, adequate, and reasonable and is not illegal, a product of collusion, or against the public interest. In considering the fairness and adequacy of a proposed settlement, the court must assess the strength of the plaintiff's case. While this assessment does not require the court to conduct a trial or a rehearsal of the trial, the court must take the necessary steps to ensure that it is able to reach an informed, just and reasoned decision. In particular, the court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement.

North Carolina, 180 F.3d at 581 (citations and internal quotation marks omitted); see also, e.g., Environmental Def. v. Leavitt, 329 F. Supp. 2d 55, 71 (D.D.C. 2004) (explaining that "the court must determine whether the proposed consent decree is reasonable from an objective point of view" (internal quotation marks omitted)).

11

Further, "leave to be heard should be extended to anyone objecting to [the proposed consent decree]." GenOn, 2013 WL 2637475, at *1.

Here, the record reflects that Defendants used Plaintiffs' images to promote Defendants' night clubs. (See Docket Entries 1, 1-2 to 1-8, 1-10 to 1-12; Docket Entry 25 at 7-12; Docket Entry 52-1 at 22-24.)[7] The record further reflects that Defendants lacked authorization for such use. (See Docket Entry 52-1 at 5.) As a neighboring court recently explained in factually analogous circumstances — involving some of the same Plaintiffs, see Nobriga v. La Kumbala Lounge & Rest., Inc., No. 7:23cv5, Docket Entry 1 at 1 (E.D.N.C. Jan. 10, 2023) — such conduct constitutes both false advertising and false association in violation of the Lanham Act. See Nobriga v. La Kumbala Lounge & Rest., Inc., No. 7:23cv5, 2024 WL 2951753, at *3-7 (E.D.N.C. May 23, 2024), recommendation adopted, No. 7:23cv5, 2024 WL 2947704 (E.D.N.C. June 11, 2024). For such violations, the Lanham Act permits recovery of costs, a maximum of treble damages, and, in appropriate circumstances, attorney's fees. See 15 U.S.C. § 1117(a).

---

7 Although some ambiguity exists (compare Docket Entry 52-1 at 22 ("Club: NC Bongos Night Club, Macarenas, Mansion, Peculiar Rabbit Estimate" (emphasis added) (all-cap font omitted)), with id. at 3 (defining "Club" to include only Bongos and Mansion and "Defendants" to include only "Mambo Enterprises, LLC" and "MPG Entertainment & Promotion, Inc." (certain internal quotation marks omitted))), the Declaration indicates that Defendants used one image of Plaintiff Cañas (see id. at 22), the sole Plaintiff not specifically linked to Defendants in the Complaint and/or its exhibits (see Docket Entry 1 at 15; Docket Entry 1-9 at 2-3).

12

The Declaration calculates the "fair market value of each [Plaintiff]'s image for the specific appropriated use by [Defendants]" (Docket Entry 52-1 at 5), based on various factors ordinarily considered in calculating models' compensation rates (see id. at 5-6). "[C]ourts addressing similar claims by some of the same Plaintiffs . . . have found that Chamberlin's 'fair market value' determination [constitutes] an adequate method of calculating damages for a defendant's unauthorized use of the identity or persona of a plaintiff." Nobriga, 2024 WL 2951753, at *10 (collecting cases).[8] Based on Plaintiffs' individualized rates, Chamberlin determined that the fair market value of the relevant images equaled "$700,000 per year used and posted." (Docket Entry 52-1 at 22 (all-cap font omitted).) Chamberlin further determined that the fair market value for the duration of Defendants' unauthorized use of Plaintiffs' images equaled $2,035,000. (See id.) Courts have utilized Chamberlin's approach to establish actual damages under the Lanham Act in similar cases, see, e.g., Nobriga, 2024 WL 2951753, at *10, and the Objections

---

8 Three Plaintiffs participated in the Nobriga matter. See Nobriga, Docket Entry 1 at 1 (identifying Ratchford, Mitcheson, and Davalos as plaintiffs). The Declaration ascribes either the same or slightly lower rates for those Plaintiffs in this matter (see Docket Entry 52-1 at 22 (providing rates of $10,000, $7,500, and $5,000, respectively)) compared to that matter, see Nobriga, 2024 WL 2951753, at *10 (providing rates of $15,000, $7,500, and $5,000, respectively).

13

offer nothing to undermine Chamberlin's damages calculations (see Docket Entry 55 at 1-10).

Moreover, even if one excluded any potentially problematic images from the calculation, Plaintiffs' actual damages would still exceed $700,000. For instance, Defendants first used some of the images many years prior to initiation of this lawsuit (see, e.g., Docket Entry 52-1 at 22), and Defendants' Answer raises laches as an affirmative defense to Plaintiffs' claims (see Docket Entry 25 at 28-29).[9] Yet even if one entirely excluded from the damages calculations all images that predated filing the Complaint by five years or more[10] — and/or any images not directly tied to Defendants in the Complaint — the damages attributable to Defendants' recent use of Guzman's images alone exceed $800,000. (See Docket Entry 52-1 at 22.) This in turn reduces the need to engage in fact-intensive discovery regarding those potential issues, helping ameliorate any concerns regarding the filing of the Motion roughly halfway through the official fact discovery period. That the parties filed the Motion more than eight months after Plaintiffs

---

[9] "[T]he Lanham Act does not expressly incorporate a limitations period for § 43(a) claims." Belmora LLC v. Bayer Consumer Care AG, 987 F.3d 284, 293 (4th Cir. 2021). Instead, the equitable doctrine of "laches is the appropriate defense to § 43(a) claims." Id. at 294.

[10] Notably, though, the dates on the screenshots included in the Complaint's exhibits (see Docket Entries 1-2 to 1-12) do not suggest that, in pursuing their claims against Defendants, Plaintiffs "unreasonably 'slept' on [their] rights," Belmora, 987 F.3d at 294 (certain internal quotation marks omitted).

filed the Complaint and more than six months after Defendants filed their Answer further reduces any such concerns. In addition, Plaintiffs' counsel appear experienced in this type of litigation, having pursued to settlement and/or default judgment many similar claims in this and neighboring courts in recent years. See, e.g., Nobriga, No. 7:23cv5 (E.D.N.C. 2023); Burkhardt v. Luna Night Club, Inc., No. 1:22cv986 (M.D.N.C. 2022); Quarles v. Latin Am. Music Promotion LLC, No. 1:22cv544 (M.D.N.C. 2022); Patrick v. Midnight Sun Invs., Inc., 1:21cv801 (M.D.N.C. 2021); Ratchford v. RJS Ent., LLC, No. 5:21cv151 (W.D.N.C. 2021).

Under the circumstances, therefore, the Proposed Judgment appears "fair, adequate, and reasonable," North Carolina, 180 F.3d at 581 (internal quotation marks omitted). Nevertheless, USLI urges the Court to reject the Proposed Judgment as collusive, simply because it contains a covenant not to execute. (See Docket Entry 55 at 5-8.) The existence of such a covenant does not itself render collusive a consent judgment. As various courts have explained, "[i]t is not fraudulent or collusive for the insured to assign its rights against its insurer and to receive a covenant not to execute in return. By executing such an agreement, the insured attempts only to shield himself from the danger to which his insurer exposed him." Andrew v. Century Sur. Co., 134 F. Supp. 3d 1249, 1267 (D. Nev. 2015) (brackets, citation, and internal quotation marks omitted). Put another way, "when an insurer

15

contests liability and the plaintiff makes a settlement offer, the insured must be allowed to consider all available options — particularly if the possibility exists that the insurer will be absolved from providing coverage." Ayers v. C & D Gen. Contractors, 269 F. Supp. 2d 911, 915 (W.D. Ky. 2003) (citing Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982)). As the Miller court explained more than forty years ago:

> If, as here, the insureds are offered a settlement that effectively relieves them of any personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in their best interest to accept the offer. Nor, do we think, can the insurer who is disputing coverage compel the insureds to forego a settlement which is in their best interests.

316 N.W.2d at 733-34.

Notably, unlike in situations with unreasonably high damages awards, the Proposed Judgment represents approximately one third of the potential damages (before any trebling) for Plaintiffs' Lanham Act claims (see Docket Entry 52-1 at 22). See also Colmac Coil Mfg., Inc. v. Seabury & Smith, Inc., No. CV-09-146, 2011 WL 4054870, at *3 (E.D. Wash. Sept. 12, 2011) (explaining that necessity of establishing judgment's reasonableness "serves as a check upon the inherent temptation for the settling parties to collude and settle for an unreasonably high amount" (internal quotation marks omitted)). On the current record, therefore, the mere existence of the covenant not to execute does not render the Proposed Judgment collusive. Instead, the Proposed Judgment

16

appears "reasonable from an objective point of view," Environmental Def., 329 F. Supp. 2d at 71 (internal quotation marks omitted).

The Objections maintain, however, that "th[e] Court [should] not enter the Proposed Judgment" because "Plaintiffs [h]ave [n]ot [e]ffected [s]ervice on USLI." (Docket Entry 55 at 1 (bold and underscored font omitted).) More specifically, although conceding that USLI "received copies of the [relevant] Orders and Plaintiff[s'] Response," the Objections assert that "USLI has *not* been served as defined by [Rule 4]." (Id. at 2 (emphasis in original); see id. at 2-5 (discussing service of process under Rule 4).) According to the Objections, "Plaintiffs have failed to validly effect service on USLI and have therefore failed to comply with the Court's Orders in this matter, and no consent judgment should be entered that affects USLI's rights." (Id. at 5.) This contention lacks merit.

Rule 4, entitled "Summons," details the procedures for effecting service of a complaint and summons, see, e.g., Fed. R. Civ. P. 4(c); cf. Fed. R. Civ. P. 5 (bearing title "Serving and Filing Pleadings and Other Papers"). As a general matter, a plaintiff must effect service of process on a defendant in compliance with Rule 4 for a federal court to obtain personal jurisdiction over that defendant. See, e.g., Warren v. McGeough, No. 1:13cv1144, 2015 WL 1795000, at *2-4 (M.D.N.C. Apr. 16, 2015). However, neither the Show Cause Order nor the Notice Order required

17

Plaintiffs to effect service on USLI under Rule 4. (See Docket Entry 49 at 10; Docket Entry 53 at 3.) Instead, out of an abundance of caution, the Court sought to provide USLI, a potential objector to the Proposed Judgment, notice of the Proposed Judgment and an opportunity to voice any objections thereto. See Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights, 616 F.2d 1006, 1014 (7th Cir. 1980) (explaining, in affirming entry of consent judgment involving long-running zoning dispute with multiple objecting intervenors, that "[t]he trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties," and that "[o]bjectors must be given reasonable notice and their objections heard and considered" (emphasis added)). USLI concedes that it received notice of the Proposed Judgment (see Docket Entry 55 at 2) and this Court has carefully considered its Objections, which do not justify rejection of the Proposed Judgment.

## CONCLUSION

On the current record, the Proposed Judgment appears objectively reasonable.

18

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 47) is **GRANTED**. A separate judgment shall issue.

This 31st day of December, 2025.

> /s/ L. Patrick Auld
> **L. Patrick Auld**
> **United States Magistrate Judge**